The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Mr. Bremer, you may proceed. Good morning, and may it please the Court, I am David Bremer for the Appellants Michael and Catherine Zito. Your Honors, due process precedent can no longer guide resolution of sovereign immunity issues in the takings context, because it is now clear that the takings clause provides a self-executing damage remedy in federal court, while the due process clause does not do that. Because of this distinction, due process-based immunity rulings like that in Reich are now in a posit in takings cases, and cases that relied on Reich, like Hutto, are not controlling. So this Court must decide the issue based on fundamental principles, particularly the 14th Amendment binds the states to the duty to pay for every taking. Hutto is the primary case in which the Commission relies on to escape this takings claim based on sovereign immunity. The problem with Hutto, as I mentioned at the outset, that Nick made clear, that in self-executing remedy for every taking, a damages remedy for every taking, and there is not... Well, Mr. Bremer, this is Judge Thacker, where in Nick did it mention sovereign immunity at all, or the 11th Amendment? Well, it's true that Nick did not come to the Court as a sovereign immunity case. So that's not the argument we're making. And it didn't leave the Court as a sovereign immunity case either, did it? It was more about timing of filing the lawsuit. Well, it was not quite. It was beyond timing. Prior to Nick, there was no damages remedy for a taking in federal court, only in state court. Nick made clear that that self-executing remedy to get money for every taking applies in federal court as well as state court. That development in the law changes the analogy to due process, because in the due process context, you do not get federal damages in federal court. It only applies in state court. And that distinction means that Reich, which is what this Court relied on in Hutto and other courts, Reich is no longer analogous to the takings context, because due process does not give you a federal self-executing remedy. So no, Nick... But the defense here is sovereign immunity. So I'm just trying to understand how Nick impacted the sovereign immunity defense. Right. I understand that, Your Honor. And that's what I'm trying to explain. Maybe I'm not doing it quite well enough. If I might try once again, and forgive me if I'm redundant here, but prior to Nick, you could not get damages for a taking in federal court. Now you can. So when you go... So when you look at due process and takings and you hold them together, the one thing you notice now, after Nick, is that in due process, you can only get damages for a tax refund in state court, but in takings, you get it in federal court. That self-executing remedy in federal court means that sovereign immunity now clashes directly with the takings remedy in federal court. And you can't rely on due process precedent. So it opens the door for you to look at sovereign immunity in a broader, more comprehensive way than was done in Hutto. Under your view, do we have to abrogate our Hutto opinion, or does Nick do that? Well, I don't think it abrogates it. You have an intervening Supreme Court decision that changes the viewpoint for this issue. So now you can't look at it and say, as Hutto did, well, due process cases are allowed in state court, but not federal court. So we're going to do the same thing in takings context. That's not possible anymore, because the takings in due process, you look at Nick, you can also look at Lingle. Takings in due process rules are not analogous anymore. It's not a one-for-one fit. So that part of Hutto, the dependence on Reich, is no longer viable. You have to look at the 14th Amendment. And one thing about the 14th Amendment that's clear, states are bound by the Due Process Clause, which incorporates the duty to pay for every taking. Government must pay for takings. And states are not outside that class of government that's bound by the 14th Amendment Clause. So Hutto got around that, but relying on due process principles. But you can't rely on due process principles if there's a federal remedy now in the takings context and there is not in the due process context. Mr. Brimley, you raise a fair point. You're right. It does raise question as to whether or not the self-executed remedy exists. And Nick said it does, but that may be true, but it doesn't open the door as to the question of what does that say in face with sovereign immunity under the 11th Amendment? That's the problem. It doesn't, Hutto doesn't clash with it, but it does raise another aspect. But the question I think just Thacker was asking you was about how do we reach that with Hutto there? Do we ask for en banc for the rest of our colleagues to hear it? But I agree with you, it does raise the question since you can't just say, as Hutto says, it's not self-executed. Nick says, yes, it can be in federal court, but there was a town. So that's a question. How do we navigate this? I think well-taken point that the landscape is different, but how do we navigate this new land? As a panel. Right. And I guess, Judge Gregory, it depends on how you read Hutto, how far you read Hutto. So if you read it as I read it, which is avoiding some of the more fundamental constitutional principles and saying as maybe a compromise, look, state courts are open to hear these claims, then we're going to apply sovereign immunity because Reich does the same thing in due process. If you read it that way, Your Honor, then I think you as a panel can go a different direction because Nick changes the reliance on Reich. If you read it more broadly, Your Honor, if you read Hutto more broadly as really getting into the fundamental 14th Amendment issues of sovereign immunity, then maybe that's a different question. But I don't see it that way. I see, I read Hutto- Counsel. Hi, this is Judge Motz. This argument has been put to three other circuits, right? And they've already- This argument has not. No, not this argument. This argument hasn't been put to any circuit. I beg your pardon? I'm not saying that you are, that the argument has been made. No, it hasn't. None of these other circuits, you don't, what I mean by that- None of them have decided that their previous Hutto-like precedent was overruled by Nick. You don't know of any of those cases? I don't know of any other case, Your Honor, which has argued that Nick neutralizes Reich. Nick neutralizes- No, that wasn't the question I asked you, was it? Well, I thought- The other circuits have a Hutto-like precedent, and they had the question before them, if Nick overruled it, or whatever you want to call it, limited it. And they all rejected that argument, didn't they? They haven't rejected our argument, no. Because our argument- They rejected an argument that made that argument, right? They rejected an argument, yes, I agree with that, but they didn't reject this argument. They didn't reject the argument- What it said was, what the two cases, I think, Judge Motz is talking about the Fifth and the Sixth Circuit, that said that Nick did not alter the sovereign immunity framework, correct? I believe- Ladd and Bay Point Properties. Your Honor, there are- And you're distinguished- The Second Circuit has an unpublished opinion that says the same thing. None of those cases, and I'm going to turn it, and I'm going to assume, give me a second, I'm going to assume a reading that agrees with you for a minute. But first, I'm going to say this. Those cases- I was quoting from the case. Right. I understand. Okay. Those cases, those counsel in those cases, the plaintiffs and appellants in those cases did not argue that Nick divorced due process and takings law, and that changes the calculus. They did not argue that. But let's assume there's a conflict. It's okay to be in a conflict if you're on the right side of a conflict, and in this case, you would be on the right side of the conflict by holding that the 14th Amendment, which binds the states to pay for takings, applies. That's the correct ruling. Now, I think- So, would we be the first circuit to do that? Are there any other cases that support your position currently? Yes, I think you would probably be the first circuit to correctly hold that the 14th Amendment abrogates sovereignty because it requires states to pay for takings, which is a well-settled principle at this point. And in your view, we would not be in conflict if we so held with the sixth, the fifth, and the second circuits? I think that would be less of a conflict than it looks on its face because of different arguments. But to the extent there is a conflict, you would be on the right side. But let's say who don't control? Let's just turn and say that you can't get past who don't, as Judge Gregory suggested earlier. Well, then what do you do then? Then you have to decide whether state courts are open, and in this case, the state courts are not open for the ZETOs to get compensation for their taking because the commission concedes they must go through a separate initial proceeding to try and invalidate the regulation, then wait for the state to decide whether they want to do an eminent domain action, and then maybe the ZETOs can file a third action later on to try an untested, uncertain, speculative procedure that's never been done before. But why would they just, as a matter of, I don't know, logic, why would a two-step process be wrong, be different? What makes that? I understand you say it won't happen, but leave that aside. It can happen. Well, Your Honor, I would say at the outset, you might be able to get compensation somewhere at some point from someone. It's not an adequate, reasonable, or certain damages remedy for the purposes of the federal takings clause. But let's just give them- That wasn't my question. I asked you, you posited to us that you couldn't do this in a single step, and what I'm saying is if you could do it in two steps, why would that make it different? Why would that make it inadequate? Two reasons, and I'm sorry for answering your question a little bit more directly, I mean indirectly. I'll answer it more directly. One reason, because under the federal takings law, you look at Nick and Williamson County, there is no exhaustion requirement to get damages. And if you require the ZETOs to go and litigate an entire procedure without getting damages so they can go get damages, that is an exhaustion requirement. Number two, my second reason is this. This procedure, the two-step, which is really a three-step if you look at page 50 of the brief, because we have to wait for the state to decide whether they want to condemn it. This three-step procedure is not a reasonable or certain procedure to get damages, and that's the test for us. It's not their test, well maybe you could try it, perhaps you'll get it. It's whether it's a certain reasonable procedure for the ZETOs to get damages for every taking. That's what the federal constitution requires, not what we require, and they're not going to guarantee that because we have to go through this sort of dinosaur procedure, yes it's a dinosaur but it's on the books, to invalidate their action, and then they say we have to wait for the state and the commission to decide if they want to institute eminent domain. And then, if the state does this or that, then we might be able to apply a temporary taking claim that's never been done before, after all this, to finally get damages for the taking. That is not reasonable or certain or adequate, and for that reason the state courts are not open even under HUDO, and therefore we are still past sovereign immunity even if HUDO continues to apply. I want to make one more point along those same lines about sovereign immunity, and that's this. There's no basis in sovereign immunity law or the just compensation clause for taking claims to trump in sovereign immunity in state court, but not in federal court. The commission concedes that as a general matter, state courts are open to taking claims because the just compensation clause is self-executed and the immunity must bow to that. But they say it's not in federal court. There's no basis in the law for a court-dependent or a forum-dependent understanding of just compensation and sovereign immunity. Just compensation is the same in state and federal court, and after Alden, sovereign immunity is the same in state and federal court. The principles are all the same, so there's no reason in the law, in doctrine, for to say sovereign immunity bows in state court, but it bars taking claims in federal court. If you look at that principle, if you look at the principle- Well, taking up that argument, if the federal government can impose limitations or conditions on the use of sovereign immunity in federal court, why can't a state do that in state court? Well, your honor, the federal government has not done that. It has not, perhaps not in this situation, but certainly does put conditions on the invocation of sovereign immunity. Well, I respect- Okay, for the purpose of the question, why don't you assume I'm correct now? I recognize that you don't think I am, but assume I am, and the federal government can do that. Why couldn't a state do that? I'm sorry, I can't. The Tucker Act of 1887, I think you're referring to, your honor. Under the Tucker Act of 1887, which gave the Court of Federal Claims jurisdiction over some damages claims against the federal government, contracts, torts, and claims under the Constitution. Since that time, the courts, the Supreme Court, in Jacobs, 1933, has made clear that you don't need any statutory authorization for a just compensation claim, even in federal court. It actually helps our cause because there's been development since the Tucker Act was that you don't need, that the Takings Clause does it by itself. It gives a damages remedy for every taking against the government, and state governments are now part of that class of governments after the 14th Amendment is subject. But even if that's not true- Okay, I just want to be sure that we are speaking the same language. I'm talking about procedural requirements as conditions of waiver of sovereign immunity that are imposed under federal law. Why couldn't the state do that? Your answer is that the federal government doesn't do that. Is that your answer? Yes. My answer is that- Okay, but if the federal government did do that, excuse me, if the federal government did do that, that would be precedent for a state government doing it, correct? No, I don't think it would be. I think you would have a different analysis under the 14th Amendment, but I don't think it- Now you think the states have more powers over sovereign immunity than the federal government? Is that what you're saying? No, what I'm saying is that it's absolutely clear that when the 14th Amendment, that the balance of power was changed, and that the states were meant to be bound by the requirement to give due process, which includes just compensation. So yes, maybe it would seem dichotomous to do that, but the correct analysis of the 14th Amendment is that every state is bound by the Due Process Clause, and there is a duty for states to pay, look at First English, for every taking that they commit. I need to stop right there, Your Honor. All right. Thank you, Mr. Brimmer. Mr. Park? Thank you, Your Honor, and may it please the Court. I'm Ryan Park, appearing on behalf of the North Carolina Coastal Resources Commission. In Hutto v. South Carolina Retirement System, as we just discussed, this Court squarely held that states may not be sued in federal court for takings claims as long as state courts remain open to adjudicate such claims. This rule decides this case. Plaintiffs are essentially seeking to re-litigate Hutto and establish a directly contrary rule based on the Takings Clause's self-executing character. But of course, a panel of this Court cannot overrule another panel's decision merely because it finds convincing new arguments made by a new party in a later case. But even if it could, the Takings Clause's self-executing character has been well-established for nearly a century since the Supreme Court's Jacobs decision, and it was considered by the Hutto Court, which rejected this feature of the clause as a basis for departing from the ordinary sovereign immunity to rule. And the Court in Hutto stated, and this was quoting 7-Up Pete Venture, the Ninth Circuit case, We conclude that the constitutionally grounded self-executing nature of the Takings Clause does not alter the conventional application of the Eleventh Amendment. And so this issue was squarely raised and decided in Hutto, and we think it decides this case. Now, plaintiffs' next argument is that this Court should reconsider Hutto in light of the Supreme Court's recent Nick decision. But as Judge Motz mentioned, every court of appeals that have considered this question has thus far held that Nick, because it did not involve sovereign immunity, does not bear on this question. Instead, Nick merely concerned a timing issue of when a plaintiff has a ripe takings claim. But ripeness, of course, has nothing to do with sovereign immunity, because ripeness is about establishing a valid claim, whereas sovereign immunity is an affirmative defense that limits federal jurisdiction over otherwise valid claims. And so the Commission believes that Hutto remains good law, and that under that standard, the only question that remains is whether North Carolina courts remain open to adjudicate takings claims against the Commission. Wait. Can you address that for us, please? Yes. Yes, Your Honor. So the North Carolina provides a clear and certain procedure, or as we agree with Mr. Bremer, that the standard is reasonable and certain procedure to guarantee the ability to challenge Commission's actions as a taking, and to receive full compensation when a court decides that a Commission action does constitute a taking. Now we believe this is a two-step process, not a three-step process, as Mr. Bremer just mentioned, because the second step is really two alternative pathways, and there's no sequencing required. As soon as a Commission action is deemed to be a taking by a state court, and that is appealable to the North Carolina Court of Appeals and the North Carolina Supreme Court, then either the state or the landowner can file an action for compensation, and the state can say, we exercise our eminent domain authority, so we're going to take fee-simple ownership over the property and provide you just compensation, and everyone agrees that that process complies with the takings clause. The only question is whether, and sorry, on the first step, when the Commission's actions are deemed to constitute a taking, then it invalidates the Commission's actions, and so that's effectively an injunction against the Commission's actions, which by the way goes beyond what is normally provided under the takings clause. And so then the only question is this interstitial question of compensation. Mr. Parker, before you leave the first step, you said something very important. You said, as soon as it's determined that it's a taking, but when does that have to happen procedurally under state? For example, the first thing is they say, well, you can't rebuild your home where it was on the site before it burned, all right? That was a decision by the Commission. What is the process for them? You said it kicks off as soon as they determine that that is a taking. Has the Commission decided yet that that's a taking? No, Your Honor. So what happens is the Commission's decision- No, no, no. I know the procedure. I'm asking you. Is that deep? In other words, if I can't build my house where I want to build, why is that not a taking? You said as soon as it's determined to be a taking. How does that process work? Can you wait a year to make that determination? Six months? Six days? Tell me that, because that's what your words, you said, as soon as it is determined. Tell me how it is determined and when and what process. So as soon as the Commission denies a variance or denies a permit, then the property owner immediately has a right to go to state court and ask that that action be invalidated as a taking. And the statute actually mandates an expedited process. So that taking's determination has to be given a peremptory setting, even over criminal cases. So it's an extremely expedited process for challenging the regulation. So you can go straight to superior court as soon as the Commission says you can't have the permit. Is that right? That's right. Or denial of the variance. That's correct. And so that is, you know, a very expedited process. It can be initiated immediately after the Commission takes any action. And again, if that action is successful, then the Commission's action is invalidated. And there's only this interstitial question of during the time in which the property owner's rights were being held up, what is the compensation for that temporary taking? And we agree that's mandated under First English. Well, tell me this then. Now, we're in the superior court now, which you say you can go from Commission not giving you the variance over permit, and then you go to superior court, let's say you win. And the superior court then decides whether it's a taking, correct? That's correct. All right. Where is this process where then the state can determine whether or not it's going to initiate an imminent domain? Isn't there a process? That's correct. Yeah. Yes. Yes, sir. Well, why would that be an issue? It's a taking. Who cares whether you want to be in an imminent domain? Now the question is, give me my money. Tell me, that's where it's in the sauce right there. Why is there a step between the superior court saying, this is a taking, and then now the state can say, well, we'll decide whether or not we're going to start in the domain. That's the problem. You shouldn't have that. That's the question. Is that adequate? The next step is, what is my just compensation? Not whether or not the state has an option to initiate an imminent domain. Tell me that. Well, so the reason why the process is bifurcated in that way, your honor, is because after a state court rules it's a taking, the commission's actions are wiped off the books. They are invalidated. And so the just compensation pathway is allowed for the state to say, we actually do want to continue in our regulatory action, even though it's a taking and we'll pay just compensation. So the state has the option to continue the taking going forward. What do you mean, what's the option? Give me the A and B. Give me, you said option, what's the A and B? So the A is, we would like to continue the restriction on the plaintiff's property, which here is a denial of a permit to rebuild the Zito's home. You haven't done that. You're absolutely denying that. So I'm sorry, the takings procedure, because plaintiffs filed this action in federal court immediately, there has never been a taking procedure. I'm talking about the procedure that would be adequate here. Right. Go ahead. What's the option they have? After the superior court has said, this is a taking, you said the state has an option. Give me the A and B or C or how many options there are. So there are two, there are two pathways to compensation there. So first is the Zitos say, you know, we would like to proceed as if the regulatory actions are invalidated and we will rebuild our home and then file a second lawsuit under the direct which our property rights were being held up. So that is a temporary taking if the state, the state can come in and say, we actually want to effectuate our policy and we will provide you a full just compensation. And so there are two pathways depending on whether the state would like to continue its regulatory action or whether it will acquiesce in the invalidation of its action. Well if it continues that option, then when will you allow, when are you going to pay them their money? So that would be according to the second step of the process, which would be an independent constitutional claim. And, you know, I think, I don't, sorry. Why would you have to make a claim if it's already determined it's a taking? That's the problem that, you know, that gets to Mr. Brimmer's question that is, you know, the fifth amendment has been incorporated by the 14th amendment to be incumbent upon the state, the states to comply with. And sovereign immunity cannot stand in the way of, for example, your right to, a lot of rights, you know, the right to remain silent, all those things in the fifth amendment. And taking is very important. As a matter of fact, the framers were very interested because the king could take the barons land and all those things. They want to make sure they were protected in that. And that was important. Then there you tell me, you take the land. And now they decide, wouldn't the next thing it'd be, if it's going to be adequate pay that, you know, their home is worth something. The question is, what is it worth? Why is that? You can then play around and say, not play around, I don't mean that sense, but then you've got another decision. Well, we'll decide whether or not you then have to have a separate claim. No, you have to answer. Why are you continuing to take and not compensating justly? That's where this panel can deal with, because Hullo did say it has to be open and have some reasonable basis that you can adequately adjudicate and get justice for your fifth amendment taking. And so that's probably, it seemed to me, it's very complicated and sort of mysterious in terms of what you said there. Why can't you go from your state court, this is not a question of sovereignty, your state court said this is a taking. Why wouldn't an adequate remedy be, now let's have a forum to decide what the value is? Respect to Judge Gregory, I don't believe that that level of scrutiny and analysis would be consistent with Hutto. So when Hutto said that if the state courts must remain open to adjudicate claims, taking these claims, it did not engage in that level of scrutiny of the South Carolina system. What it did was it cited a South Carolina Supreme Court case that said, like there are many North Carolina Supreme Court cases saying that plaintiffs may bring direct constitutional taking these claims. And it said, because of that procedure is open, a direct constitutional claim, then the state courts remain open for taking these claims and sovereign immunity applies in federal court. And I don't think that it would be possible for the North Carolina Supreme Court to have spoken more clearly on this question. It said that the sovereign immunity, that the takings right is not susceptible to impairment by legislation. That's from Midget. And then went on to say that where the constitution points out no remedy and no statute affords an adequate remedy under a particular fact situation, then the plaintiffs can bring a direct constitutional claim. And because the North Carolina courts are open for that kind of claim, that's the level of analysis that is required by HUDL. So what court do you go to, what court do you go to in the state once the Superior Court says it's a taking? What court do you go to immediately? I want my example, give me, here's a hypothetical. I've gone to court, I've paid money to litigate this, the Superior Court, I won, it's a taking. So the Fifth Amendment is actuated by letter and reality. What do I do to go immediately to get my compensation? The very next day or that day after a state court holds that is a taking, the landowner can file an action in that exact same court before the exact same judge saying, now that you've adjudicated that commission's action is a taking, I want just compensation for the time that my property was held up. Because now I have an injunction and I want money for the time that my property was held up. Has that ever happened? We are not aware of any situation where that has happened, Your Honor, because no party has cited a case where a state Superior Court has held that a commission's action constitutes a taking. There are several cases, yes, Your Honor? No, so the question of somebody asking for compensation for a temporary taking has, to your knowledge, never been come up, is that right? I believe so, although I think that the North Carolina courts have established that it is following the first English precedent that a temporary taking is compensable. Mm-hmm. Okay. And, you know, so there are several cases, including the Midgett case, by the way, where a plaintiff attempted to bypass the statutory procedure and never went through the camera process or a process by a different statute and filed a direct constitutional claim. And that is what happened in Midgett, the North Carolina Supreme Court case, and the Supreme Court said that you have this right to file a direct constitutional claim. So it is- Did the people get any relief? I believe that was remanded. So I'm not aware personally whether it was deemed to constitute a taking in the end. Could a North Carolina resident bring a direct constitutional claim in federal court? It could bring the claim, but it would be barred by sovereign immunity for the reasons that I discussed earlier. What about a federal constitutional claim in state court? Yes. A federal constitutional claim? Yes. Yes. So in Midgett and several of the other cases, what the plaintiffs did is they filed a parallel state and federal takings claims. And the North Carolina Supreme Court didn't distinguish between the two kinds of claims because it has read the state's takings protection to be coextensive, but it allowed both cases to proceed to the merits. I interrupted Judge Gregory, I think. No, no, no. It's- So, go ahead. Thank you. But you said that when they bought the federal claim in state court, you said in one instance you said that was sovereign immunity problem still? I'm sorry. So I think the North Carolina case law is clear, and again, I would point to Midgett as the best case, that a takings plaintiff can file both state and federal constitutional takings claims in state court and have them resolved on the merits. But in federal court, you know, obviously our position is that sovereign immunity bars the federal court from resolving the claim. And if I may, I'd like to touch on a point that Judge Motz was making in the call with the present counsel, which is essentially this Ruckelshaus rule. And in that case, the federal government has, in many instances, conditioned a waiver of sovereign immunity for takings claims on some administrative or first or conditional process. And so Ruckelshaus was this kind of obscure provision involving, you know, involving pesticides. But what the Supreme Court there said is there was an arbitration scheme set up by an initial statute, and that arbitration scheme didn't allow for recovery to the full extent of the just compensation clause. And so it said that it can be a first stage of process, and then you can file a second Tucker Act claim for any remaining compensation that you might be owed under the Constitution. And as the Sixth Circuit mentioned, held in Ladd, you know, because Nick reaffirmed that process, that two-step compensation process, it suggests that sovereign immunity principles still remain active in the takings context, and that Nick wasn't intended to abrogate sovereign immunity in the takings context. But it has a special resonance here, because that was a two-stage process where there was a statutory scheme. Mr. Park, tell me that if you bring a federal takings claim in state court, what law is going to apply as to what is a taking? You could bring parallel state and federal claims. What law is going to apply if you bring a federal taking action in state court of North Carolina? What law would apply? What substantive law? Yes, Your Honor. It would be the law of the United States Constitution as interpreted by this court, the U.S. Supreme Court. Right. So taking, so the question is, in North Carolina, you don't believe really that not being able to bill is really a taking, do you? That's correct, Your Honor. We intend to defend these takings claims on the merits at the appropriate time. Right. So it's not a taking. So should federal law honor that? Federal law is kind of simple. I own it. You took it. Just compensation. Yours is, I took it, but it's not taken. Well, we don't believe that under federal law, this would be a taking. And our merits defense, or one of our merits defenses, would be under Lucas. So versus the South Carolina case in the U.S. Supreme Court, where the Supreme Court said that where there are background principles of property law that are being applied to restrict development on a landowner's property, that that is not a taking. And here, the Zetos purchased this property, you know, many decades after these setback requirements had already been in place. And when they did purchase it, they knew or should have known that the ocean was encroaching on the coastal property. I mean, there used to be an entire row of houses in front of the Zetos' home. And I'm not sure when the direct home in front of that property was taken by the ocean. But they purchased the property knowing that there were setback requirements and seeing that the ocean was approaching. And for that reason, we believe there's not a taking. Did they pay taxes? Did they pay taxes on that land? I would assume so, yes. So, the state of North Carolina was collecting taxes on it. They would just own a property like anybody else owns property. You never said you can't live here, did you? You didn't condemn the land and say it was not habitable, did you, as a state? That's right, Your Honor, and that would be our second marriage defense. They're ready to build their old property back on their own site now. Oh, well, it's not a taking. Matter of fact, you should have never lived there. That's what you're saying, that they knew all along. But the question, that's the problem. Is it really open if the state is saying, well, this is not a taking anyway? And therefore, that's a serious question. We don't have to rely on Cuddle to say that, the question of whether or not that's open. We're not bound by that at all. It just says, you know, that's what, that's really your burden, isn't it, almost? Well, people say it's both because they have to show it's inadequate. But based on what you're telling me is, I hear it. It's very difficult to say, you know, an action of eminent domain. Because eminent domain has many functions, right? In order to do it, you have to show there's a public need. You can't all those things go through it. You say, well, there's a public need there. We really didn't take land we can use, so what's the public quid pro quo? Eminent domain has a lot of aspects to it. You start getting into that. But what the court says that the Fifth Amendment is important, and states have to yield to it under the 14th Amendment is incorporated. And so that, I mean, the question, and maybe you're right, Nick didn't deal with, it certainly didn't deal with sovereign immunity. But it's certainly the idea, as you said before, well-established that is self-executing remedy. And maybe this is the arcane aspect of North Carolina law that may be cleared up here in terms of maybe or maybe not. It's maybe not adequate to address a clearly established and a very important right that the framers, as a matter of fact, probably the framers may have been more important with this than any other right, really, in terms of this. Certainly didn't secure a right to vote and things like that. But it did about property. Council, before you sit down, can I ask you about, are you familiar with the Penn Central case? Yes, Your Honor. So how do you think that it relates here? I think that the Penn Central analysis would be the second part of the marriage dispute between the parties when we eventually get there. Whether the state's action was reasonable and whether it intruded on the state's, the property owner's rights to the extent that it was in effect a taking. So I think that that's a marriage question that the state courts. Well, earlier when Judge Gregory was talking to you, he said under federal law, a taking is a taking. You don't make any determination. But of course, that's what Penn Central was arguing. And the Supreme Court rejected that argument. That you have to, you know? That's correct. I'm not sure the law is so very different. Yeah, I mean, I think the regulatory taking, the doctrine is multifaceted and complicated. But what I'll say is that it's not the case that any development restriction is a per se taking that requires compensation of the federal constitution. It's a, under Penn Central, it's a balancing test. And it's about the intrusion on the property owner's rights. And also this issue of the background principles of property law and whether they're being applied in a neutral way. And if so, that suggests it's not a taking. Thank you. If I may just, well, I'm over my time, so. Your time is up, but you may, you may briefly, we did pepper you with some questions. Go ahead. Thank you, Your Honor, I'll be brief. So, Hutto establishes the rule that if the state courts are open to adjudicate a takings claim, then sovereign immunity applies in federal court. It does not require a guaranteed remedy, does not neutralize any other applicable defenses that a state might raise, such as, for example, statute of limitations. And under the Hutto rule, all that's required is that there remain an open procedural pathway for full compensation. And because North Carolina provides such a pathway, the commission asks the court to affirm it. Thank you, Mr. Park. Mr. Bremer, you have some time reserved. Thank you, Your Honor. It shouldn't take 20 minutes to explain how a property owner gets money when it's determined that there's a taking. One thing is clear in this case. My co-counsel admits that the ZETOs must go through a procedure. Look at page 50 on their brief, page 50. They must go through a procedure that cannot get them damages to find a taking. Once they go through that procedure that cannot get them damages for a taking, then depending on what the state's course of action is, they say, then maybe there will be an eminent domain action filed against the ZETOs in a different statutory procedure. And then maybe they can file a temporary takings claim under this general principle that North Carolina has that some takings are compensable. That is not a certain procedure, and counsel concedes it must be certain for damages. Regardless of what federal law says about whether there's a taking or not, it is absolutely clear that when there is a taking, there must be money right then. That's first English, that's NIC, and that is settled law. But you don't get that here in North Carolina. What you get is this convoluted explanation that maybe you can do this and maybe you can do that, and there's no precedent, but we think two steps, maybe three, depending on what the state does. Look at page 50, then maybe the ZETOs somewhere down the line will get money for a taking. That is not what the federal constitution requires. It requires payment for every taking. And the state, the commission, excuse me, is trying to avoid that through an arcane procedure that, yes, was adopted 30 years ago, and it's no longer valid in light of first English and NIC, but it is the law for now. The legislature can change it, but they haven't done that. They've left this procedure in for the ZETOs to go sue for a taking but not get money, to spend all their money but not get money when a taking is found. And that is not reasonable or certain and adequate. So this court should hold, should it hold that HOODA controls and the sovereign league generally applies that in this limited circumstances where there's an old statute that doesn't give damages, that the state courts are not open and the ZETOs must be able to go somewhere, in this case, a federal court, where they get money when a taking is found, that there's certainty on that. And that is the fundamental problem with their argument. Again, please look at page 50 and how they argue this case and you'll see all the steps that you have to go through. This midget case that they're now citing too is just simply a 1960 general case about, yes, and states generally must pay for takings as a general principle, but it doesn't apply specifically to the commission. And this, the commission has argued in this case throughout in the district court that the exclusive procedure is statute 113, which does not give compensation. That was their defense to this case originally. When we filed this case in federal court, their defense was this, you have to use the exclusive procedure in 113. You can't go to federal court. And so now they're backtracking a little bit and say, well, maybe there's another procedure. It's not that exclusive. That's not what they argued before. And regardless, it doesn't matter. We have to go through a procedure that doesn't guarantee us compensation. That's not open to compensation. And I'll stop right there. Thank you, Your Honor. Thank you so much, Mr. Bloomer and Mr. Park. Thank you so much for your arguments. We can't come down and reach you as we would love to, but nonetheless, thank you for your arguments and helping with so many issues in this case. Appreciate it so much. Be safe and stay well. Thank you. Thank you, Your Honor.
judges: Roger L. Gregory, Diana Gribbon Motz, Stephanie D. Thacker